UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CAROL A. TAIANO,

                Plaintiff,

  -against-

MICHAEL J. ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 09-CV-2849 (FB)

*Appearances:*
*For the Plaintiff:*
CHRISTOPHER J. BOWES, ESQ.
54 Cobblestone Drive
Shoreham, New York 11786

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
Eastern District of New York
By: DAVID M. ESKEW, ESQ.
     Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

      Plaintiff, Carol A. Taiano ("Taiano"), seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Both parties move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

      Taiano argues that, in determining her residual functional capacity ("RFC"), the Commissioner failed to properly evaluate symptoms related to her impairments, in particular, her urinary frequency. She seeks remand for the calculation of benefits or, alternatively, for further evidentiary proceedings.

For the reasons stated below, Taiano's motion is granted and the Commissioner's is denied. The case is remanded for further proceedings.

I

Taiano — a now 63 year-old former clerical worker — applied for DIB on July 26, 2006, alleging ongoing complications following a heart attack, kidney disorder and arthritis.[1] Her application was denied and she was granted a hearing before an Administrative Law Judge ("ALJ"). The ALJ determined that she: (1) was engaged in substantial gainful activity; (2) had a medically determinable impairment or combination of impairments that was severe; (3) had an impairment that did not meet or medically equal an impairment listed in C.F.R. § 404, Subpart P, Appendix 1; but (4) retained the RFC to perform the full range of sedentary work, and, therefore, could return to her past relevant work as an administrative assistant. *See* 20 C.F.R. § 404.1520(b)-(f) (setting forth the first four steps of the prescribed five-step analysis).[2]

In reaching his determination, the ALJ considered, but did not give controlling weight to, the medical opinions of Taiano's four treating physicians — Dr. Albert Tarasuk, a urologist, Dr. Stephen Reuben, an internist, Dr. Ari Ezratty, a cardiologist, and Dr. Arnold Goldman, an orthopedist — all of whom opined on the nature and severity of Taiano's impairments, but did not reference her urinary

---

[1] Her date last insured was December 31, 2006.

[2] Since the ALJ decided that Jackson could perform her past relevant work, he did not have to address the last step, namely, whether she could do any work at all in the national economy given her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g)(setting forth the fifth step in the five-step analysis).

2

frequency. Dr. Tarasuk rendered a medical report stating that he had diagnosed her with ureteropelvic junction obstruction[3] "with stones," and that she had undergone a pericutaneous lithotripsy, a procedure to treat kidney stones. Administrative Record ("AR") at 177 - 78. Dr. Tarasuk also completed a functional assessment form regarding Taiano's ability to perform sedentary work, in which he opined that she could *not* stand /walk for more than two hours or sit for more than six hours in an eight-hour work day. *See id.* at 228. He further stated that she suffered from pain — which he identified as "flank pain"[4] — that would prevent her from performing eight hours of work. *See id.* at 229.

Dr. Reuben submitted a medical report stating that he had diagnosed Taiano with "ASHD" (or areteriosclerotic heart disease), renal stones and depression. *See id.* at 181. He further stated in the report that symptoms of one or more of the diagnosed impairments were leg pain and dyspnea (i.e., shortness of breath). *See id.* Dr. Reuben completed a functional assessment form where he opined that Taiano could not stand /walk for more than two hours or sit for more than four hours, and, further, that she would require frequent breaks during the work day. *See id.* at 236-37.

---

[3] Ureteropelvic junction obstruction is a blockage in the area that connects the renal pelvis (part of the kidney) to one of the tubes (ureters) that move urine to the bladder, which can occur due to kidney stones. Medline Plus, A Service of the U.S. National Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/001267.htm.

[4] Flank pain refers to pain in one side of the body between the upper abdomen and the back that indicates kidney trouble. Medline Plus, A Service of the U.S. National Library of Medicine, http://www.nlm.nih.gov/medlineplus/ency/article/003113.htm.

Dr. Ezratty submitted a functional assessment form in which he opined that Taiano could not stand/walk or sit for more than two hours; that she would require frequent breaks during the work day, and that pain would prevent her from performing eight hours of work. *Id.* at 231-32. Dr. Goldman agreed with Dr. Ezratty's opinion that Taiano would require frequent breaks, would be prevented from working due to her pain, and on the number of hours Taiano could stand/walk, but opined that she could not sit for more than four hours in an eight-hour work day. *See id.* at 233-34.

The ALJ gave "considerable weight" to the opinion of Dr. Marilee Mescon, a consultative physician who examined Taiano at the request of the Commissioner. *Id.* at 31. Dr. Mescon's diagnosis, *inter alia*, was that she had coronary artery disease "with a history of inferior wall mycardial infarction," arthritis of the knees and right hip and a "history of current urinary tract infection and recurrent kidney stones." *Id.* at 190. Dr. Mescon's long-term prognosis for Taiano was "poor," and she opined that, although "there are no objective findings to support the fact that [she] would be restricted in her ability to sit," her "capacity to stand for prolonged periods of time . . . or carry heavy objects would be moderately restricted" due to her medical problems. *Id.* at 190-91.

The ALJ further noted Taiano's testimony regarding the limiting affects of her symptoms — namely shortness of breath, pain, and "constant urination." *Id.* at 30. Taiano testified that she suffered from "constant pain" in her back and hips, *id.* at 50-51, and, after her heart attack, would get "short winded" and suffer from radiating leg pain when she walked for more than a block. *Id.* at 52-53. She also testified that, although she had undergone procedures to treat her kidney condition — including on at least

4

two different occasions the insertion of a stent to facilitate urination that had been blocked on account of stones — she still "need[ed] more procedures done" because the problem was "not corrected." *Id.* at 46-50. She further claimed that the onset of urinary frequency worsened her overall condition and, in combination with the effects of her other impairments, would prevent her from working. *See id.* at 21, 57.

While the ALJ found that Taiano's medically determinable impairments could be expected to produce her alleged symptoms, he did not find her statements regarding their intensity, persistence and limiting effects to be credible "to the extent they are inconsistent with [his] residual functional capacity assessment." *Id.* at 30. The ALJ further stated that "[t]he medical records simply fail to confirm the accuracy of [Taiano's] assertions and hearing testimony," citing, with respect to the symptoms related to her heart condition, negative stress tests and normal echocardiographs, and, with respect to her "urinary condition," a successful "stent placement surgery" — disregarding Taino's testimony, as cited in the decision, that she "requires more medical procedures to address the urination problem." *Id.* Furthermore, he considered her arthritis to be "mild," and stated that the record contained no evidence that she was being treated for depression. *Id.*

Taiano does not argue that the ALJ improperly discounted the opinions of her treating physicians; she only contends that, in determining her RFC, the ALJ did not properly evaluate the credibility of her symptoms — in particular, the limiting effects of her urinary frequency.

5

## II

In reviewing a determination of the Commissioner, "a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "more than a mere scintilla," and should be that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations marks and citation omitted).

The Commissioner has established a two-step inquiry to evaluate the credibility of a claimant's symptoms. *See* Soc. Sec. Rul. 96-7p; 20 C.F.R. § 404.1529(c). First, the ALJ must determine whether the medical signs or laboratory findings show that the claimant has a medically determinable impairment or impairments that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1). Second, the ALJ must evaluate the intensity, persistence and limiting effects of the claimant's symptoms, which requires the ALJ to make a credibility finding based on the entire case record.[5] 20 C.F.R. § 404.1529(c)(1) - (4); Soc. Sec. Rul. 96-7p.

Although the ALJ recognized this two-step process, he did not properly apply it. First, the ALJ erred in discounting Taiano's credibility because her alleged

---

[5] Factors considered in an assessment of the claimant's symptoms, such as pain, include: (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i) -(vii).

symptoms were not consistent with his RFC determination; rather, he was supposed to assess the credibility of her symptoms in order to determine her RFC. Second, the ALJ inappropriately relied solely upon objective medical findings in being dismissive of Taiano's testimony about her urinary frequency, pain and other symptoms. "Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms." *See* Soc. Sec. Rul. 95-5p. And the Second Circuit has repeatedly observed that, "[a]s a general matter, objective findings are not required in order to find that an applicant is disabled." *Green-Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003). *See also Donato v. Secretary of the Department of Health and Human Services*, 721 F.2d 414, 418-19 (2d Cir. 1983); *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990); *Eiden v. Secretary of Health, Education and Welfare*, 616 F.2d 63, 65 (2d Cir. 1980); *Cutler v. Weinberger*, 516 F.2d 1282, 1286-87 (2d Cir. 1975). Accordingly, it was inappropriate for the ALJ to rely on, for example, negative stress test findings and successful stent surgery to discount Taiano's complaints of pain, shortness of breath and urinary frequency, especially, with respect to the latter, in light of Dr. Mescon's diagnosis of a "history of current urinary tract infection."

In any event, the ALJ erroneously concluded that her urinary condition had been remedied by successful stent procedures; the procedures were conducted to address complications related to her kidney stones, not her urinary frequency. Indeed, a stent is a tube placed inside the ureter with the purpose of "keep[ing] the ureter open to facilitate the passing of kidney stones and . . . relieve any pain." *Brown v. Selwin*, 250

F.Supp. 2d 299, 303 n. 5 (S.D.N.Y. 1999).

In sum, the failure of the ALJ to properly assess the credibility of Taiano's symptoms provides a basis for remand.

### III

"Remand is the appropriate remedy when there are gaps in the administrative record or the ALJ has applied the improper legal standard." *See Rivera v. Barnhart*, 379 F.Supp. 2d 599 (2d Cir. 2005). (internal citations and quotation marks omitted). "A district court should order a remand when it concludes that an ALJ determination to deny benefits was not supported by substantial evidence." *See Butts v. Barnhart*, 385 F.3d 377, 384 (2d Cir. 2004).

Remand is required for the ALJ to apply the proper legal rule for evaluating the limiting effects of Taiano's symptoms — in particular, her urinary frequency — and to more fully develop the record as to the effects of her urinary frequency on her ability to perform sedentary work. A proper evaluation of Taiano's urinary frequency is critical because performing sedentary work requires one to spend at least six hours per day sitting down,[6] an activity that would presumably be impeded by, among other things, the need to take frequent bathroom breaks. *See Rivera v. Barnhart*, 379 F.Supp. 2d 599, 606 (S.D.N.Y. 2005) (remanding disability claim for further

---

[6] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a); Soc. Sec. Rul. 96-9p ("'Occasionally' ... would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour work day.").

proceedings, in part, for a full evaluation of claimant's complaints of frequent urination and pain, and the effects that these symptoms would have on claimant's ability to sustain employment).

## IV

The Commissioner's motion is denied, and the case is remanded for further evidentiary proceedings.

**SO ORDERED.**　　　　s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 1, 2010